UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M. HEATHER MILLER,

               Plaintiff,

                                         Case No. 14-cv-12819
                                         Honorable Gershwin A. Drain

v.


DETROIT PUBLIC SCHOOLS, *et al.*,

               Defendants.

_____/

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY ON COUNT II [#57] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#60]

## I.    INTRODUCTION

Plaintiff Heather Miller has filed a two-count Second Amended Complaint alleging that Defendants Detroit Public Schools ("DPS"), Dr. Sherrell Hobbs, Cassandra Washington and Wilma Taylor-Costen,[1] violated her rights under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA") when they unlawfully excluded her from the recall process for laid-off teachers based on absences that were

---

[1] Dwana Brown was also named as a Defendant in the Second Amended Complaint. However, Plaintiff never served Ms. Brown, therefore Plaintiffs' claims against Ms. Brown are dismissed without prejudice.

protected by the FMLA (Count I).  In Count II, Plaintiff asserts that Defendants violated 42 U.S.C. § 1983 when they failed to recall her in retaliation for her extensive speech on matters relating to DPS.

Presently before the Court are two motions: (1) Plaintiff's Motion for Summary Judgment as to Liability on Count II and (2) Defendants' Motion for Summary Judgment.  These matters are nearly fully briefed[2] and a hearing was held on May 19, 2016.  For the reasons that follow, the Court will grant Plaintiff's Motion for Summary Judgment as to Liability on Count II and will deny Defendants' Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

Plaintiff began working for DPS as a middle school math teacher in August of 2001.  Since that time, she and her husband, Steve Conn, have been outspoken, activist teachers against many of the policies of the DPS.  According to Plaintiff, she and her husband are the most famous activists in the DPS.

In 2007, the Chairman and Superintendent of the School Board, terminated both Plaintiff and her husband.  Administrative Law Judge ("ALJ") Doyle O'Connor of the Michigan Employment Relations Commission ("MERC") issued a decision finding

---

[2] Defendants did not file a Reply in support of their motion for summary judgment.  On May 18, 2016, Plaintiff filed a Supplemental Brief in support of her Motion for Summary Judgment and Defendants filed their own Supplemental Brief in response on the same day.

that those terminations were in retaliation for Plaintiff and her husband's activities in opposition to school closings and other policies.  Plaintiff and her husband filed an action in this Court asserting that their terminations violated their First Amendment rights.  Judge Stephen J. Murphy issued a preliminary injunction reinstating Plaintiff and her husband to their positions after concluding that they had a substantial likelihood of success on their First Amendment claim.  *Conn v. Board of Educ. of City of Detroit*, 586 F. Supp.2d 852 (2008).

Following their reinstatement, Plaintiff and her husband resumed teaching, as well as their activities opposing many DPS policies.  For instance, they denounced charter schools, asserted that Detroit was being subjected to discriminatory treatment, organized pickets against layoffs and school closings, opposed the contract negotiated by the Emergency Financial Manager, and filed legal actions against deductions from the teachers' pay.  Plaintiff distributed thousands of leaflets in front of the DPS schools, faxed fliers to hundreds of school offices, sent numerous emails to hundreds of teachers, helped gather 2,000 signatures in support of the recall petition, and appeared on television and radio broadcasts on several occasions.

In fact, Plaintiff asserts that she has never met a member of DPS management who did not know her political activity.  Defendant Cassandra Washington, who works in DPS's Human Resources Department, has testified that Plaintiff's political

-3-

activity was "generally known" throughout the District.

During the 2010-2011 academic year, Plaintiff began to develop a serious health condition. She was hospitalized twice and had numerous absences. In the following academic year, Plaintiff's condition worsened. From September through December, she sought treatment from Dr. Stephen Wilson on 13 occasions for abdominal pain caused by her condition. Following Christmas break, she sought treatment from Dr. Wilson on five other occasions. In late February, Plaintiff's condition became even more serious and she missed nine consecutive days from February 27, 2012 through March 9, 2012. On March 2, 2012, she sought treatment at Henry Ford Hospital's Emergency Room and was admitted to Beaumont Hospital on March 4, 2012. She called her school and spoke to Patricia Parker, the school secretary, who had been designated by the administration to handle calls regarding attendance. She informed Parker of her medical condition and Parker sent her a blank FMLA request.

When Plaintiff returned to work, Parker and the principal, Dwana Brown, told Plaintiff that she had to turn her FMLA form in at an unspecified office downtown. Plaintiff went from office to office until she found someone who accepted her FMLA form. DPS claims that it has no record of Plaintiff's FMLA request.

On April 16, 2012, Plaintiff missed work again when she sought treatment at

-4-

Henry Ford Hospital's Emergency Room and with Dr. Michael Mahoney. After seeing Dr. Mahoney on several other occasions, he finally recommended that Plaintiff receive surgery. Plaintiff underwent surgery at Beaumont Hospital in May of 2012. She requested nine more days of FMLA leave due to the surgery and recovery period. Plaintiff claims that out of the total thirty-one days she missed during the 2011-2012 academic year, all but one or two were attributable to her serious health condition.

In the midst of Plaintiff's ongoing health issues, on April 10, 2012, Plaintiff, like many DPS teachers, received a notice of layoff. Following her layoff, Plaintiff was placed in a pool for recall. At that time, recalls were governed by an evaluation scale whereby teachers were scored in five different categories, with a total possible score of 100. A teacher needed a score of 70 points to be eligible for recall. When Plaintiff was evaluated in the spring of 2012, Brown marked all thirty-one of her absences as unexcused. This caused her to receive a 0 out of the possible fifteen points for attendance on her evaluation, thus resulting in a total score of 64. This violated DPS's policy since "[a]pproved medical/FMLA Leave" absences were not to be counted as unexcused. *See* Plf.'s Resp., Ex. 4. Because Plaintiff received a score lower than 70, she was not recalled to any schools for the 2012-2013 academic year.

Plaintiff was able to find a recall opportunity on her own when she contacted

Defendant Sherrell Hobbs, the principal of Golightly Educational Center.  Hobbs had been interested in hiring Plaintiff the year prior, however DPS had a hold on transfers. When Plaintiff contacted Hobbs about a possible position, Hobbs immediately returned her call and set up an interview.

During the interview, Hobbs told Plaintiff that she knew and admired her activism and that of her husband.  Hobbs eventually showed Plaintiff a teacher roster with her name on it and told her that she was hiring her to teach math at Golightly for the 2012-2013 academic year.  She also told Plaintiff that she wanted her to march in the following week's back-to-school parade and directed the Assistant Principal to show Plaintiff the school and "her classroom."  He did as directed and when they reached the third floor, he took Plaintiff to the math room and said "this will be your room."  He also discussed the equipment she would need and the extracurricular activities she would lead.  Plaintiff left Golightly at 1:00 p.m. believing she would be employed for the coming school year.

However, within hours of Hobbs notifying the DPS central office of her plan to hire Plaintiff, Defendant Assistant Superintendent Wilma Taylor-Costen called her and claimed Hobbs' staff had been cut by one position.  Hobbs immediately sent an "URGENT" email to the hiring office telling them not to send the hiring letter to Plaintiff.  However, she did not contact Plaintiff and let her know the offer of

employment was rescinded.

Thirteen days later another math position purportedly became available at Golightly. However, the central office referred another mathematics teacher to Hobbs and she hired that person one day later. Hobbs claims that she did not hire Plaintiff because she "forgot."

Plaintiff filed an unfair labor practice charge with the MERC in February of 2013. Plaintiff alleged that she had been laid off and not recalled due to her union activism in violation of the Public Employment Relations Act, MICH. COMP. LAWS § 423.210 *et seq*. ("PERA"). On April 21, 2015, ALJ David M. Peltz issued a decision concluding that Plaintiff had been laid off and not recalled due to her protected union activities. On May 18, 2016, the ALJ's decision was affirmed by the full MERC.

## III.   LAW & ANALYSIS

### 1.   Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part

of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there

-8-

is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### 2. Plaintiff's Motion for Summary Judgment as to Liability on Count II against Defendants DPS, Hobbs and Taylor-Costen

### A. Retaliation

In order to establish that she was not recalled in retaliation for the exercise of her First Amendment rights, Plaintiff must show: (1) She engaged in constitutionally-protected activity, (2) that Defendants' adverse action caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity, and (3) Defendants' adverse action was motivated at least in part in response to the exercise of her constitutional rights. *Boulton v. Swanson*, 795 F.3d 526, 530 (6th Cir. 2015). Once a prima facie case is established, the burden then shifts to the Defendants to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct. *Id.* at 531.

Here, Plaintiff argues that the ALJ has previously determined all of the elements of her retaliation claim in her favor, except for the first element which was not before

him.  To resolve whether Plaintiff's speech was constitutionally protected, the Court must determine whether Plaintiff spoke as a "citizen on a matter of public concern." *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).  The question of whether the topics upon which Plaintiff spoke were matters of "public concern" is a question of law to be determined by the Court.  *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir.  2000).  If the Court concludes that the employee's speech was on a matter of public concern, the Court "then balance[s] the justifications for a speech restriction against the employee's free speech interest."  *Boulton*, 795 F.3d at 531.

After being reinstated to her math position at Marquette when Judge Murphy entered a preliminary injunction, Plaintiff ran for office in the Detroit Federation of Teachers, called and emailed teachers about a lawsuit challenging the DPS, participated in meetings on that subject, engaged in picketing against layoffs and school closings, obtained signatures on numerous petitions related to the school, and passed out or emailed thousands of copies of leaflets to teachers and members of the public.

In her emails and leaflets, Plaintiff discussed "defend[ing] public education," opposition to charter schools, and emergency managers, claimed the DPS's Termination Incentive Plan was illegal and urged support for a lawsuit against its implementation, urged removal of DPS's Emergency Managers, criticized the

-10-

Governor's educational policies, demanded the publication of the DPS budget, campaigned to keep the Catherine Ferguson Academy for Young Women, the Day School for the Deaf, and the music and arts program open, protested the plan to split DPS into two districts, and her campaign for DFT office was on a platform of opposing the policies of U.S. Secretary of Education Arne Duncan.

Here, the Court concludes as a matter of law that Plaintiff's speech was on matters of public concern. Speech on union matters, particularly where it concerns public safety and the quality of services is usually deemed speech on matters of public concern. *American Postal Workers Union v. United States Parcel Serv.*, 830 F.2d 294, 301 (D.C. Cir. 1987); *Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 586 (7th Cir. 1992); *Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1319-20 (11th Cir. 2005). Defendants have offered no countervailing interest in repressing Plaintiff's speech. Plaintiff's speech on union-related matters, DPS's educational policies, emergency managers, charter schools, and DPS's budget is protected from retaliation under the First Amendment.

### B.    Collateral Estoppel

As to the remaining elements of her retaliation claim, Plaintiff argues that these issues have been conclusively determined by the 2015 decision of the ALJ, which was affirmed by the full MERC on May 18, 2016. It is well settled that "when a state

agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Davet v. City of Cleveland*, 456 F.3d 549, 552 (6th Cir. 2006) (quoting *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)).

Michigan law recognizes that collateral estoppel bars the relitigation of conclusions made in previous actions. *See Roman Cleanser Co. v. Murphy*, 386 Mich. 698, 703-04 (1972). Collateral estoppel may be invoked when: (1) a question of fact essential to the judgment has been actually litigated and determined by a valid and final judgment; (2) the same parties or those in privity with those parties had a full opportunity to litigate the issue, and (3) mutuality of estoppel exists. *Nummer v. Treasury Dep't*, 448 Mich. 534, 541(1995). Additionally, where a party seeks to preclude the relitigation of an issue on the basis of an administrative decision, Michigan law requires that the administrative decision was adjudicatory in nature, provides a right to appeal, and the Legislature must have intended to make the decision final absent an appeal. *Id.* at 542.

"As to private parties, a privy includes a person so identified in interest with another that he represents the same legal right, such as a principal to an agent, a master to a servant, or an indemnitor to an indemnitee." *Peterson Novelties*, *Inc*. v. *City of*

*Berkley*, 259 Mich. App. 1, 12-13 (2003).   In order to find privity to exist between a party and a non-party, Michigan courts require "both a substantial identity of interests and a working or functional relationship . . .  in which the interests of the non-party are presented and protected by the party in the litigation."  *Phinisee v. Rogers*, 229 Mich. App. 547, 553-54 (1998).

Collateral estoppel also requires mutuality of estoppel.  *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 684-85 (2004).  Estoppel is mutual if the party taking advantage of the earlier adjudication would have been bound by it, had it gone against him. *Id.*

After a full adjudicatory hearing on March 26, 2014, the ALJ issued his decision on April 25, 2015, wherein he found in relevant part that:

> (1) Plaintiff had been employed by DPS as a middle-school math teacher at Marquette Elementary Middle School from 2001 to 2012, except for the academic year 2007-2008, when she and her husband, Steve Conn, were placed on unpaid, administrative leave for participating in a demonstration over planned school closures.

> (2) Plaintiff was widely known throughout the school district as a Union activist.   Defendant Washington admitted that not only did she know Plaintiff was married to Steve Conn, she knew that Plaintiff was an activist with respect to Union matters.   When Defendant Hobbs interviewed Plaintiff in August of 2012, she immediately recognized her as Conn's wife and praised the couple for being "fighters."   As such, Plaintiff readily established that she engaged in protected activity of which Respondent was aware.

> (3) Plaintiff presented sufficient proof to establish that DPS engaged in

-13-

a purposeful effort to rid itself of one of its most outspoken critics.

(a) The school district had no intention of giving Plaintiff a meaningful opportunity for recall. After the 2012 layoffs, teachers were allowed to pick three schools at which to interview for purposes of recall. Plaintiff was only referred to two high schools and the district knew that she could not teach at either school because she was only certified to teach middle school math and science. When Plaintiff contacted Human Resources about this fact, she received no response.

(b) At the end of the 2011-2012 academic year, two external reviewers observed Plaintiff in her classroom and rated her as "highly effective" or "effective." Around the same time, the school principal also purportedly observed Plaintiff's classroom, but gave Plaintiff a 1.9 performance rating which resulted in Plaintiff receiving 40 points on her evaluation score, rather than 50 points. Her composite score would have jumped from 64 to 74, which is significant because only teachers with a composite score of 70 or higher were eligible for recall.

(c) The classroom observation allegedly conducted by the school principal was fabricated, thus Plaintiff's performance rating was based on a falsified report.

(d) On her own, Plaintiff secured an interview for a middle-school math teaching position at Golightly, with the school's principal, Defendant Hobbs. Hobbs had attempted to hire Plaintiff at Golightly the year before. Hobbs offered Plaintiff the teaching position at the interview, showed Plaintiff a staff roster with her name on it and instructed the Assistant Principal to take Plaintiff on a tour and show her the room she would be using for that school year.

(e) On the same day, Hobbs told central administration to send the letter confirming that Plaintiff had been hired to teach at Golightly, she received a call from Defendant Taylor-Costen. Taylor-Costen informed Hobbs that the school district had reduced the number of available positions for Golightly by one. Hobbs then sent an email to Human Resources marked "URGENT," which instructed personnel not to send a hire letter to Plaintiff. Hobbs claimed that she marked the email

"URGENT" to avoid misleading Plaintiff, however Hobbs made no effort to contact Plaintiff to tell her that she did not in fact have a teaching position for the upcoming school year.

(f) Less than two weeks later, Hobbs discovered a "vacancy" for a middle school math teacher.  However, she did not call Plaintiff but instead interviewed and then hired another candidate.  Hobbs claimed that she forgot about Plaintiff, even though she was famous in the district and had been interviewed only two weeks earlier.

(g) The ALJ concluded that Hobbs' testimony was "unconvincing" and "preposterous," that she "deliberately attempt[ed] to obfuscate" material facts, and that the only "plausible" explanation for her actions was that Hobbs had hired Plaintiff and was then forced to withdraw that offer "after the central management got wind of the fact that a job had been proffered" to "one of the most notorious and outspoken critics of [the DPS] management."

(h) The ALJ also found that DPS took additional steps to prevent Plaintiff's recall in the summer of 2013.  In March of that year, the school district settled with the DFT and gave teachers like Plaintiff the opportunity to expunge their performance evaluations and exercise their right to "priority recall" into an available position.  Plaintiff submitted her expungement form and request for priority recall.  However, DPS sent Plaintiff a letter several months later indicating that it was unable to contact her.  Evidence revealed that an unnamed individual of the school attempted to contact Plaintiff using an old telephone number, rather than by using her cell phone number or by email, which the district had used on countless occasions in the past.

(4) In conclusion, the ALJ found that "[t]he record overwhelmingly establishes that [Plaintiff] was an outspoken critic of the DPS and that management at every level was well aware of her background as an activist on behalf of her fellow employees. . . . Respondent's stated explanation for its failure to recall [Plaintiff] was pretextual."

Here, collateral estoppel establishes that DPS took adverse actions against

-15-

Plaintiff to prevent her recall in 2012 and 2013. Also, it has been established by the MERC proceeding that the adverse actions were motivated at least in part by Plaintiff's union-related speech and criticisms of DPS. As previously discussed, the speech that was at issue before the ALJ is the same speech at issue here, specifically, opposition to charter schools and emergency managers and criticism of the district's educational policies. All of Plaintiff's speech is protected by both PERA and the First Amendment. Moreover, the ALJ's findings of fact essential to Plaintiff's retaliation claim have been actually litigated and determined by a valid and final judgment. Additionally, mutuality of estoppel exists since Plaintiff would have been estopped from bringing the present action had the ALJ found in favor of DPS on Plaintiff's unfair labor charge. *See Partlo v. Clarkston Community Schools*, No. 06-11023, 2007 U.S. Dist. LEXIS 5681, *21-22 (E.D. Mich. Jan. 26, 2007) (granting summary judgment to the defendants because "the MERC preclusively established that [the plaintiff's] union-related speech was not a 'substantial' or 'motivating' factor in his termination.")

Also, the ALJ's decision was adjudicatory in nature, provided a right to appeal, and the Legislature intended to make the decision final absent an appeal. *Partlo*, 2007 U.S. Dist. LEXIS 5681 at *18-22. Therefore, DPS, which was a party in the MERC proceeding, is unquestionably bound by the ALJ's decision that it rescinded the recall

of Plaintiff to Golightly because of her speech.  *Nummer*, 448 Mich. at 541.

The individual Defendants argue that they were not parties to the administrative action before the ALJ and they were not in privity with DPS, thus they did not have a full and fair opportunity to litigate Plaintiff's retaliation claim.  Defendants rely on *Burda Bros. Inc. v. Walsh*, 22 F. App'x 423, 430 (6th Cir. 2001) and *Glass v. Abbo*, 284 F. Supp.2d 700, 706 (E.D. Mich. 2003) to argue that they cannot be bound by the ALJ's decision because they "did not have a personal stake in the outcome of the earlier proceeding," thus they were not in privity with the DPS.  *Glass* and *Burda* are distinguishable from the present matter because those cases stand for the proposition that decisions to suppress evidence in a criminal proceeding are not entitled to *res judicata* effect in a later 42 U.S.C. § 1983 action against the officers for unlawful arrest because the officers and prosecutor are separate entities with separate interests.  Neither case dealt with whether managers of a public employer are bound by a state administrative agency decision finding their actions on behalf of the employer were retaliation for protected speech.

However, the Sixth Circuit Court of Appeals has decided this issue in *Eckerman v. Tennessee Dept. of Safety*, 636 F.3d 202 (2011).  In that case, a state trooper brought a § 1983 action against his department and against the officials involved in the decision to demote him because he was a member of the Republican party.  *Id*. at

204.  The district court granted summary judgment because it found that the real reason for the demotion was the troopers' violations of the Department's rules. *Id.* at 205.  The Sixth Circuit reversed the district court, concluding that the defendants were bound by a state administrative law judge's decision finding the trooper had not violated those rules.  *Id.*

Here, Hobbs and Taylor-Costen fulfill the criteria for privity set forth in *Phinisee*, 229 Mich. App. at 553-54.  Specifically, the interests of Hobbs and Taylor-Costen were not only substantially identical but absolutely identical to DPS's interests in the MERC proceeding.  Under the PERA, a public employer is liable if one of its agents denies employment to Plaintiff on account of her protected speech.  *See* Mich. Comp. Laws § 423.210(1)(c).

There also existed a "working relationship" wherein "the interests of [Hobbs and Taylor-Costen] were presented and protected by" DPS in the MERC proceeding. *Phinisee*, 229 Mich. at 553-54.  Hobbs testified at length concerning her version of the events leading up to the rescission of Plaintiff's job offer at Golightly.  The ALJ rejected Hobbs' claimed non-discriminatory reasons for failing to recall Plaintiff as "preposterous" and an attempt to "obfuscate material facts."

Moreover, according to Hobbs, Taylor-Costen is the person who ordered her to cut a position at Golightly mere hours after Hobbs hired Plaintiff for the math

position.  DPS could have called Taylor-Costen to support its claim that the position was suddenly cut for economic reasons, but it did not and the ALJ was entitled to draw an adverse inference because of this failure.  Here, Taylor-Costen, as Assistant Superintendent, was a top manager wholly aligned with and represented by DPS's attorney in the MERC proceeding.  She cannot escape collateral estoppel because DPS's attorney determined her testimony was unhelpful to the DPS's case.  Because Hobbs and Taylor-Costen were in privity with DPS, they are also estopped from relitigating Plaintiff's retaliation claim.

### C.   Qualified Immunity

Defendants also argue that the ALJ's decision is not binding on them because the issue of qualified immunity was not before him.  However, qualified immunity is an issue of law for the Court to decide.  *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988).

Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Chapman v. Brown*, 814 F.3d 447, 457 (6th Cir. 2016)(quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  The first inquiry in the qualified immunity analysis is whether, based on the facts alleged and considered "in the light most favorable to the party asserting the injury," the official's

conduct violated the plaintiff's constitutional or statutory rights. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

If the district court finds a constitutional or statutory violation, the next step is to determine whether the right was clearly established at the time of the incident. *Id.* at 202. The district court may address the qualified immunity analysis in any order. *Kent*, 810 F.3d at 390. The plaintiff bears the ultimate burden of proof, *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (citation omitted), and if the plaintiff fails to carry his burden as to either element of the qualified immunity analysis, then the official is immune from suit. *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

Because Plaintiff has established her First Amendment retaliation claim in the MERC proceeding and Defendant is collaterally estopped from relitigating this claim, Plaintiff has met her burden on the first prong of the qualified immunity analysis. Plaintiff's constitutional rights were violated when Defendants failed to recall her because of her speech that was critical of the DPS's educational policies.

As to the second prong of the qualified immunity analysis, the Court finds that any manager in the Defendants' position would have understood that she was under an affirmative duty not to deny Plaintiff employment because of her speech concerning charter schools, emergency managers, school closings and misuse of

public funds.  Defendants are not entitled to qualified immunity.

Based on the foregoing considerations, the Court concludes that Plaintiff is entitled to summary judgment on Count II of her Second Amended Complaint against DPS, Defendant Hobbs and Defendant Taylor-Costen.

### 3.    Defendants' Motion for Summary Judgment[3]

#### A.    FMLA

The FMLA provides that an employee like Plaintiff is entitled to a total of twelve weeks of leave "due to a serious health condition that makes the employee unable to perform" her job and that an employer may not "interfere with, restrain or deny the exercise" of the employee's right to take such leave.  29 U.S.C. §§ 2612(a)(1)(D); 2615(a)(1).  The FMLA further provides that employees may bring an action for damages and reinstatement if the employer deprives them of employment because they had FMLA protected absences.  29 U.S.C. § 2617(a).

A serious health condition is defined as an "illness, injury, impairment or physical or mental condition that involves–(A) inpatient care in a hospital . . . ; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).  A serious health condition involving continuing treatment includes any one or more of the

---

[3] Because the Court concludes that Plaintiff is entitled to judgment in her favor on Count II, the portion of Defendants' present motion that seeks summary judgment on Count II is denied and the Court will not address Defendants' specific arguments herein.

following:

> (a) Incapacity and treatment.  A period of incapacity of more than three consecutive, full calendar days, any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day incapacity, unless extenuating circumstances exist, by a health care provider . . ., or
>
> (2) Treatment by a health care provider on at least one occasion, which results in regimen of continuing treatment under the supervision of the health care provider.
>
>     *                *                *
>
> (c) Chronic conditions.  Any period of incapacity or treatment for such incapacity due to a chronic serious health condition . . . [which] (1) requires periodic visits . . . for treatment by a health care provider . . . (2) continues over an extended period of time . . . and (3) may cause episodic rather than a continuing period of incapacity[.]

29 C.F.R. § 825.114.

In order to establish a prima facie case of retaliation under the FMLA,[4] Plaintiff must show that: (1) she was engaged in a statutorily protected activity; (2) that Defendants knew of her protected activity, (3) she suffered an adverse employment action; and (4) that a causal connection existed between her protected activity and the adverse employment action. *Skrjanc v. Great Lakes Power Service Co.,* 272 F.3d 309, 314 (6th Cir. 2001).  If a prima facie case is established, Defendants must come forward with a legitimate non-discriminatory reason for their actions.  *Id.*  If

---

[4]  There are two distinct theories of recovery under the FMLA: (1) the "entitlement" or "interference" theory arising under 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2).  In her Second Amended Complaint, Plaintiff raises an FMLA retaliation claim under § 2615(a)(2).

Defendants meet their burden, then Plaintiff has the burden of showing that Defendants' articulated reason "is in reality a pretext to mask discrimination." *Id.*

In their motion, Defendants argue that there is insufficient proof of an FMLA violation, and alternatively, even if Plaintiff had sufficient proof a violation occurred, she cannot establish a causal link between the violation and the adverse employment action. To the contrary, Plaintiff has come forward with sufficient evidence to demonstrate a question of fact exists as to her FMLA claim.

As an initial matter, it does not appear that Defendants dispute that Plaintiff suffered from a serious health condition. Plaintiff's hospitalizations and the period that followed, which totaled eighteen days off from work, falls within the ambit of 29 U.S.C. § 2611(11)(A). Plaintiff missed an additional thirteen days for the same serious health condition, which falls within the purview of 29 U.S.C. § 2611(11)(B) and 29 C.F.R. § 825.114(a) and (c).

Defendants maintain that Plaintiff was only incorrectly charged for eight absences covered by the FMLA, rather than the more than thirty days she claims should have been excused under the FMLA. Defendants further argue that even with the correction for the eight FMLA absences, Plaintiff would still receive an evaluation score of zero.

Here, Plaintiff engaged in statutorily protected conduct by taking leave for a

serious health condition.  Additionally, Defendants knew that Plaintiff was taking leave for a serious health condition.  Defendants do not dispute that Plaintiff provided medical verification for her hospitalizations.  While she did not provide medical documentation for the other absences, Defendants never requested such documentation.

Moreover, Plaintiff suffered an adverse employment action because Defendants gave her a low score on her evaluation due to poor attendance in the Spring of 2012, which is the same time she was hospitalized and had surgery for her health condition. This low evaluation score precluded Plaintiff from being recalled for the following academic year.  Additionally, it is not apparent from the record before this Court what legitimate, non-discriminatory reason Defendants have advanced to overcome Plaintiff's prima facie case.  As such, there are questions of fact as to Plaintiff's retaliation claim under the FMLA and Defendants are not entitled to summary judgment.

### B.   Qualified Immunity

Here, the unresolved factual disputes between Plaintiff and Defendants prevent the Court from granting qualified immunity to Defendants on Plaintiff's FMLA claim. *See Kostrzewa v. City of Troy*, 247 F. 3d 633, 641-42 (6th Cir. 2001); *see also, Carpenter v. Bowling*, 276 Fed. App'x 423(6th Cir. May 2, 2008).  "When the legal

-24-

question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity." *Bouggess v. Mattingly*, 482 F. 3d 886, 896 (6th Cir. 2007). Defendants are entitled to qualified immunity only if their testimony is credited and the Plaintiff's is not, thus Defendants are not entitled to summary judgment on Plaintiff's FMLA claim.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment as to Liability on Count II [#57] is GRANTED. Defendants' Motion for Summary Judgment [#60] is DENIED.

SO ORDERED.

Dated: May 27, 2016

/s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 27, 2016, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk